FILED
JANUARY 30, 2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| RUTHIE GILBERT, | ) |
| Plaintiff, | ) |
| v. | ) |
| CITY OF WAUKEGAN, WAUKEGAN POLICE OFFICER AMARO, Star # 707, and UNKNOWN WAUKEGAN POLICE OFFICERS | ) |
| Defendants. | ) JURY TRIAL DEMANDED |

**08 C 671**

**JUDGE KOCORAS**
**MAGISTRATE JUDGE MASON**

## COMPLAINT

PLAINTIFF, by and through her attorneys, LOEVY & LOEVY, complains of Defendants, CITY OF WAUKEGAN, WAUKEGAN POLICE OFFICER AMARO, Star # 707, and UNKNOWN WAUKEGAN POLICE OFFICERS, and states as follows:

### Introduction

1. This action is brought under 42 U.S.C. § 1983 to redress the deprivation under color of law of Plaintiff's rights as secured by the United States Constitution.

### Jurisdiction and Venue

2. This Court has jurisdiction of the action under 28 U.S.C. §§ 1331 and 1367.

3. Venue is proper as Plaintiff resides in this judicial district and Defendant City of Waukegan is a municipal corporation located here. Further, the events giving rise to the claims asserted here all occurred within this district.

## Background

4. Plaintiff Ruthie Gilbert is thirty-eight years old.

5. On or about June 23, 2007, Ms. Gilbert lived with Robert Hunter at 809 North County Street Waukegan, Illinois. Ms. Gilbert's Illinois State Identification verified that this was her legal residence.

6. On or about June 23, 2007, Mr. Hunter threw Ms. Gilbert out of the residence in the early morning hours after a verbal confrontation.

7. After walking around the neighborhood for some time, Ms. Gilbert returned to the house on County Street. Ms. Gilbert initially hid in the basement, but then decided to retrieve some belongings and leave the residence.

8. Ms. Gilbert proceeded upstairs to get her belongings. As soon as she reached the upstairs bedroom, Mr. Hunter jumped out of bed and knocked Ms. Gilbert to the floor. Mr. Hunter then jumped on top of Ms. Gilbert and drove his knee into her chest. Mr. Hunter then grabbed Ms. Gilbert by the head and repeatedly slammed the back of her head into the hardwood floor.

9. After slamming Ms. Gilbert's head into the hardwood floor several times, Mr. Hunter grabbed her by the hair and dragged her down the stairs.

10. Once at the bottom of the stairs, Mr. Hunter jumped on Ms. Gilbert while she lie prone at the foot of the stairs. Mr. Hunter then, again, repeatedly slammed Ms. Gilbert's face into the floor. While still on top of Ms. Gilbert, Mr. Hunter called the police.

11. Defendants Amaro and Unknown Waukegan Police Officers ("Defendant Officers") arrived at the residence in response to Mr. Hunter's call. When they arrived, Ms. Gilbert's face was extremely swollen, she had open cuts on her face, and there were marks indicating abuse all over her body. Mr. Hunter had absolutely no marks or injuries anywhere on his body.

12. Mr. Hunter informed the Defendant Officers that he, and not the battered Plaintiff, was the victim of domestic violence. Even though no prudent police officer could reasonably believe the account of the unharmed Mr. Hunter, the Defendant Officers placed Ms. Gilbert under arrest for domestic battery. Ms. Gilbert was never afforded a chance to give her account of the facts. Nor was Ms. Gilbert ever afforded the opportunity to make a criminal complaint against Mr. Hunter for the abuse she suffered at his hands.

13. After her arrest, Ms. Gilbert was transported to the Waukegan police station by the Defendant Officers. Once inside, Ms. Gilbert was handcuffed to a bench. Ms. Gilbert was repeatedly denied her requests for medical attention.

14. After some time, Ms. Gilbert was booked by the Waukegan police department. During the booking process, Ms. Gilbert began shaking, convulsing, and ultimately lost consciousness. Ms. Gilbert was rushed to Vista Medical Center where she was treated for a concussion and multiple contusions. Ms. Gilbert was then released into the custody of the Defendant Officers with instructions that she be kept under strict observation for at least 24 hours.

15. Upon returning to the Waukegan police station, Ms. Gilbert was booked and placed into a cell. Ms. Gilbert stayed in the custody of the Waukegan Police until June 25, 2007. Ms. Gilbert was not given any medical attention while in custody despite the clear instructions of the doctors at Vista Medical Center.

16. Ms. Gilbert was charged with domestic battery. She was forced to attend court on August 15, 2007, where she pleaded not guilty. On September 26, 2007, the State's Attorney dropped the charges against Ms. Gilbert.

### Legal Claims

17. In the manner described more fully above, Defendants violated Plaintiff's constitutional rights, causing her damage. Among others, Defendants violated Plaintiff's rights under the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments.

18. Defendants' conduct also constitutes state law malicious prosecution and intentional infliction of emotional distress in that they caused Plaintiff to be prosecuted for a crime she did not commit, all without probable cause.

19. Defendants' conduct also constitutes state law false imprisonment in that they caused Plaintiff to be unlawfully and unreasonable imprisoned without justification.

20. The misconduct described herein was objectively unreasonable, and undertaken with malice, willfulness, and reckless indifference to the rights of others such that the Defendants' actions shock the conscience.

21. As a matter of both policy and practice, the City of Waukegan directly encourages the very type of misconduct at issue here. In this way, the City of Waukegan proximately caused the violation of Plaintiff's rights by maintaining policies and practices which were the moving force driving the foregoing constitutional violations.

22. The above-described widespread practices, so well-settled as to constitute *de facto* policy in the City of Waukegan, were able to exist and thrive because municipal policymakers with authority over the same exhibited deliberate indifference to the problem, thereby effectively ratifying it.

23. The widespread practices described in the preceding paragraphs were allowed to flourish because the City of

Waukegan declined to implement sufficient training and/or any legitimate mechanism for oversight or punishment. Indeed, the City of Waukegan's system for investigating and disciplining police officers accused of misconduct was, and is, for all practical purposes, nonexistent. As a result, officers are led to believe that they can act with impunity, thereby encouraging the very type of abuses which befell Plaintiff.

24. All of the Defendants' interactions with Plaintiff and the criminal charges brought against her were undertaken under color of law, and within the scope of their employment.

25. Because each of the Defendants acted within the scope of their employment, the City of Waukegan is therefore liable as their employer for any resulting damages and award of attorneys' fees.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendants, CITY OF WAUKEGAN, WAUKEGAN POLICE OFFICER AMARO, Star # 707, and UNKNOWN WAUKEGAN POLICE OFFICERS, awarding compensatory damages and attorneys' fees, along with punitive damages against the Defendant Officers in their individual capacities, as well as any other relief this Court deems just and appropriate.

### JURY DEMAND

Plaintiff hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

RESPECTFULLY SUBMITTED,


/s/ Matthew T. Jenkins
Attorneys for Plaintiff

Arthur Loevy
Jon Loevy
Michael Kanovitz
Matthew Jenkins
LOEVY & LOEVY
312 North May St
Suite 100
Chicago, IL 60607
(312) 243-5900